NOTICE
Decision filed 06/22/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220656-U

NO. 5-22-0656

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ALICIA ROBERTS, as Next Best Friend of B.R., | ) ) ) | Appeal from the Circuit Court of Coles County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16-L-25 |
| WILLIAM HIGHLAND, as Special Representative for the Estate of Elmer Highland, Deceased, | ) ) ) | Honorable Mark E. Bovard, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court erred in granting summary judgment in a negligence action where a genuine issue of material fact exists.

¶ 2    The plaintiff, Alicia Roberts, as next best friend of B.R., a minor, filed suit for injuries sustained when B.R. was struck by a vehicle driven by Elmer Highland. The circuit court granted the defendant's motion for summary judgment, and the plaintiff appeals. We find that a genuine issue of material fact exists which precludes entry of summary judgment. Therefore, we reverse and remand this matter for further proceedings.

¶ 3                            I. BACKGROUND

¶ 4    On July 28, 2009, Elmer Highland's vehicle allegedly struck B.R. while she was riding her bicycle. George Michael Roberts (Father) had been watching his daughter, B.R., ride her bicycle

1

while he sat on his back porch. Father heard the impact of the collision but did not see Elmer's vehicle actually strike B.R. Alicia Roberts (Mother), B.R.'s mother, was inside of their home during the incident, and did not witness any of the events. B.R. does not remember the circumstances surrounding the event.

¶ 5     On July 28, 2016, the plaintiff, Alicia Roberts, as next best friend of B.R., filed a complaint claiming that Elmer Highland negligently struck B.R., with his vehicle. The plaintiff alleged in the complaint that Elmer negligently and carelessly: (1) "owned, possessed, operated and/or controlled the said motor vehicle"; (2) "failed to keep a proper lookout when danger was imminent"; (3) "failed to yield to a pedestrian"; (4) "failed to give audible warning of the approach of said vehicle by sounding the horn"; (5) "[f]ailed to reduce speed so as to avoid striking [B.R.]"; and (6) "[w]as otherwise negligent in his operation of his motor vehicle." The plaintiff additionally alleged that B.R. suffered multiple injuries and sought damages in excess of $50,000.

¶ 6     After the plaintiff filed suit, Elmer passed away. William Highland, the defendant's brother, was appointed as a special representative for the estate of Elmer Highland. An answer was filed on June 7, 2017, denying the substantive allegations of the plaintiff's complaint.

¶ 7     The parties completed discovery on May 4, 2020. Also on May 4, 2020, B.R. turned 18 years old. The plaintiff filed a motion to substitute parties for B.R. to be named as the plaintiff since she was no longer a minor.

¶ 8     The defendant filed a motion for summary judgment on February 25, 2022, and argued that the plaintiff could not establish a genuine issue of material fact. The defendant claimed that the Dead-Man's Act (Act) (735 ILCS 5/8-201 (West 2020)) applied after Elmer's death which prevented B.R., Mother, and Father from testifying at trial because they had an interest in the outcome of the action adverse to the deceased. The defendant additionally asserted that because

2

B.R. had no memory of the event and neither of B.R.'s parents witnessed the event, the plaintiff would not be able to establish a cause of action for negligence.

¶ 9 The plaintiff filed a response to the motion for summary judgment disputing that the Act barred Father's testimony. The plaintiff argued that Father was never a party to the action, and he would not have a direct benefit in the outcome of the proceedings. Additionally, the defendant's position that Father was not a witness to the incident was inaccurate as demonstrated by Father's testimony during his deposition.

¶ 10 The plaintiff attached a copy of the transcript of Father's discovery deposition to the response in support of her argument that Father had been a witness to a part of the incident. Father testified that he was sitting outside on his back porch facing Pine Avenue before and during the incident. From where he was seated, he watched B.R. ride her bicycle. B.R. repeatedly rode her bike on the sidewalk for almost a half of a block to the corner and then back to the garage. Father had instructed B.R. that she could only ride her bicycle on the sidewalk and on their driveway. B.R. never rode in the street.

¶ 11 Father testified that from his seated position on the porch, he "could see the vehicle that Elmer was driving." Father was further questioned on how he knew that the incident involved B.R., and the following statements were made:

> "A. I physically seen—The car had stopped right there, so, obviously, I knew something was wrong. And, you know, I found my daughter. You know, she had been hit, so ...
> Q. And I'm not asking this very well. From the seated position on your porch, you were unable to see [B.R.] or the bicycle; true?
> A. No, that's not true.
> Q. Okay.
> A. I could see her from the porch, and I could see the driveway, the extension of the driveway from the porch, as well.
> Q. Okay. From your porch, after you heard the noise, you could see [B.R.]?
> A. Yes.
> Q. Okay.

3

A. At that point.

Q. And then you left the porch and went to her, I assume?

A. Yes.

Q. And when you came up to her, can you tell me what you remember seeing or hearing?

A. Well, I mean she was on the ground. She had blood coming out of her nose, and she was crying, obviously. And I remember seeing the bike had some damage to it. And my main focus was her."

Father was asked additional questions about what he had heard during the accident, and he responded:

"A. Just sounded like metal and my daughter screaming.

Q. Did you—

A. And I heard her friend yelling, '[B.R.]'s been hit. [B.R.]'s been hit.' "

Father also was questioned on the location of the occurrence, and the following statements were made:

"Q. And so do you know one way or the other if when B.R. was struck whether she was in your driveway or on Pine Avenue?

A. She was in the driveway.

Q. How do you know that?

A. Well, number one, where I saw her at. I had been watching her the entire, you know, time that she was out there. She never went in the road ever. And the day that the accident occurred, that's where she—you know—where I found her, as well.

Q. Okay.

A. Her and her bike were there.

Q. You did not see her get struck by the car, though; fair enough?

A. I did not see her get hit by the car, no."

Father was asked additional question about the location of Elmer's car, and he responded as follows:

"Q. So, when you came upon the scene, was his car stopped?

A. Yes.

Q. Where was his car when you came upon the scene?

A. There was a parked car here, and his car was angled. I don't know how to explain it so that it could be on the record.

* * *

A. —with the front end facing towards the garage at an angle."

4

¶ 12     Father was shown the crash report during his deposition. The diagram included in the report depicted that the incident occurred in the middle of Pine Avenue. According to the diagram, Elmer's car was parallel to Pine Avenue and B.R.'s bicycle was in the middle of the street. The diagram additionally depicted two parked cars. Father disagreed with the accuracy of the diagram that was prepared by a police officer. Father testified that the parked cars were further east from the driveway than shown and Elmer's vehicle was angled to the northwest.

¶ 13     On April 12, 2022, the circuit court held a hearing on the motion for summary judgment. At the beginning of the hearing, the parties discussed that the plaintiff had an issue when filing the response to the motion for summary judgment and the defendant had not received a copy of the response until the day of the hearing. The parties agreed to proceed with the hearing and allow the defendant to file a reply to the plaintiff's response afterwards.

¶ 14     The defendant argued that Mother was inside during the incident and had not witnessed what had occurred. Father was outside but did not see "everything unfold." He could testify to the position of the bicycle after the incident in relation to the position of Elmer's vehicle. Father, however, had not witnessed the collision or the speed of the vehicle. The defendant further argued that Father was liable for B.R.'s medical bills which gave him a pecuniary interest in the outcome of the case if it was favorable to B.R.

¶ 15     The plaintiff conceded that Mother was not outside when the incident occurred. Father, on the other hand, was outside, and he had been watching B.R. ride her bicycle. Father testified that he saw Elmer's car and the car was "nosed into the driveway at an angle" and he could testify to where the bicycle was positioned after contact. The plaintiff additionally argued that Father would not benefit financially from the outcome of the trial and was not barred from testifying under the Act.

¶ 16    The defendant then argued that Father was not qualified as an expert accident reconstructionist. He had not witnessed the collision and would not be able to testify to where B.R. was located when the incident occurred. The defendant argued that the plaintiff was not able to demonstrate a genuine issue of material fact because no one witnessed the incident, and the accident could have occurred in the middle of the road. Elmer could have pulled off the road and angled his car after the incident occurred. The defendant further argued that there were potentially other witnesses who could testify but discovery had closed without depositions of potential witnesses.

¶ 17    In response, the plaintiff argued that Father saw Elmer's vehicle in the driveway as well as his daughter's bicycle in the driveway and expert testimony was not necessary. The jury would be able to decide whether the collision had occurred on the road or in the driveway based on Father's testimony.

¶ 18    The circuit court took the motion under advisement. The defendant was allowed to file a reply by April 22, 2022.

¶ 19    The defendant filed a reply to the response to the motion for summary judgment and argued that the deposition testimony of Father was insufficient to create a genuine issue of material fact because he had not witnessed Elmer hit B.R on her bicycle. He would not be able to testify to the speed, distance, or maneuvers of the vehicle when the incident occurred. The defendant further argued that the Act applied because Father had a direct pecuniary interest in the outcome of the matter when his deposition was taken because B.R. was a minor at that time and Father was liable for B.R.'s medical expenses.

¶ 20    On April 29, 2022, the circuit court entered a written judgment granting the defendant's motion for summary judgment. The circuit court found that the Act applied to B.R. and B.R. had

no memory of the incident; therefore, B.R. could not testify to what had occurred. The circuit court also found that neither of B.R.'s parents would be barred from testifying under the Act because they did not have a direct pecuniary interest in the outcome of the case. Neither Mother nor Father had witnessed the events leading up to the incident or the incident itself. The circuit court determined that while Father may "speculate how and where the actual incident occurred, he did not see what happened and would not be competent to testify as to the allegations of negligence in the Plaintiff's Complaint." The circuit court found that plaintiff was unable to create a genuine issue of material fact sufficient to survive the motion for summary judgment because the plaintiff had "otherwise failed to identify any competent witness." The circuit court therefore granted summary judgment for the defendant.

¶ 21     The plaintiff filed a motion to reconsider the finding of summary judgment. The plaintiff argued that Father was a witness to the incident and was able to testify to sufficient circumstantial evidence for the trier of fact to find in favor of the plaintiff. The plaintiff referenced portions of Father's deposition, including:

> "Q. From where you were sitting, could you see what happened or did you have to actually leave and go investigate it?
> A. I could see the vehicle that Elmer was driving.
> * * *
> Q. And I'm not asking this very well. From the seated position on your porch, you were unable to see [B.R.] or the bicycle; true?
> A. No, that's not true.
> Q. Okay.
> A. I could see her from the porch * * *."

¶ 22     The defendant filed a response to the motion to reconsider and argued that the plaintiff's motion to reconsider was insufficient as it did not reference any evidence that was not available at the time of the motion hearing; it did not argue a change in existing law; and it did not indicate errors in the circuit court's application of the law. Rather, the plaintiff cited to the deposition

7

attached to her response to the motion for summary judgment which the circuit court had reviewed when making its determination. The defendant additionally argued that the circumstantial evidence Father could testify to at trial was limited to establishing that an accident had occurred, but insufficient to establish a cause of action for negligence because Father had not witnessed the actions of the parties involved in the incident.

¶ 23 On September 9, 2022, the circuit court held a hearing on the plaintiff's motion to reconsider. The plaintiff argued that the defendant breached a duty to follow traffic laws when he drove into the plaintiff's yard and that was the proximate cause of B.R.'s injuries. The plaintiff argued that the defendant was contesting the testimony of the Father's actual knowledge and there was contradictory factual testimony in dispute. The plaintiff claimed that summary judgment should be denied where inferences could be drawn from the undisputed facts testified to by Father, and a reasonable person could draw divergent inferences from those undisputed facts. A reasonable person could find it more true than not that Elmer was negligent based on where his vehicle was located in the driveway along with B.R.'s position in the driveway. The plaintiff argued that the defendant was contesting the facts and weight of the evidence along with the credibility of the witness, and not whether a cause of action could be established.

¶ 24 The defendant then argued that the plaintiff had not satisfied proof of the breach of duty or proximate cause standard for a cause of action for negligence. Father did not see the accident. He did not see B.R. get struck by the car. The defendant argued that Father's testimony was speculation and the motion to reconsider should be denied.

¶ 25 The circuit court considered Father's deposition and found that Father's statements, including that "[Father] did not see her get struck by the car," were the basis for granting the motion for summary judgment. The circuit court indicated it had again considered Father's

8

deposition testimony. The circuit court found that without Father "seeing what happened before he heard the noise that caused him to look up, he would be speculating as to what [B.R.] had done in the moments before or what [Elmer] had done in the moments before." The plaintiff had not presented a genuine issue of material fact and the motion to reconsider was denied, as there were no competent eyewitnesses to the incident. This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27     On appeal, the plaintiff argues that the circuit court erred in finding no genuine issue of material fact was raised by Father's testimony and granting the defendant's motion for summary judgment. The plaintiff additionally argues that the circuit court erred in finding Father's testimony as "speculative."

¶ 28     "The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 14. Summary judgment is a drastic means of disposing of litigation and should only be granted where the right of the moving party is clear and free from doubt. *Lewis*, 2020 IL 124107, ¶ 15.

¶ 29     Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). Where material facts are in dispute or where reasonable persons may draw different inferences from undisputed facts, summary judgment should not be granted. *Lewis*, 2020 IL 124107, ¶ 15. "To survive a motion for summary judgment, the nonmoving party need not prove his case at this preliminary stage of litigation; however, the plaintiff must present some evidentiary facts to support each element of his cause of action, which would arguably entitle him to a

9

judgment." *Marquardt v. City of Des Plaines*, 2018 IL App (1st) 163186, ¶ 16. We review a circuit court's summary judgment rulings *de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 30 The plaintiff filed suit claiming that Elmer was negligent and careless while operating his vehicle and striking B.R. The plaintiff's complaint included that Elmer was negligent for his failure to give an audible warning, failure to yield, and his failure to reduce speed to avoid contact with B.R.

¶ 31 In a negligence action, the plaintiff must establish that defendant owed a duty of care, that defendant breached that duty, and that defendant's breach was the proximate cause of the plaintiff's resulting injuries. *Hawkes v. Casino Queen, Inc.*, 336 Ill. App. 3d 994, 1000 (2003). A plaintiff is not entitled to recovery based on "[t]he mere happening of an accident." (Internal quotation marks omitted.) *Argueta v. Krivickas*, 2011 IL App (1st) 102166, ¶ 10.

¶ 32 Proximate cause is established where there is reasonable certainty that the defendant's actions caused the injury. *Hawkes*, 336 Ill. App. 3d at 1000. Reliance on unsupported conclusions, opinions, or speculation is insufficient to raise a genuine issue of material fact. *Argueta*, 2011 IL App (1st) 102166, ¶ 8. Direct evidence is not required to demonstrate causation. *Hawkes*, 336 Ill. App. 3d at 1000. The plaintiff may rely on circumstantial evidence where such evidence "reasonably infers negligence from all the facts and circumstances shown to exist prior to and at the time of the collision." *Rerack v. Lally*, 241 Ill. App. 3d 692, 696 (1992).

¶ 33 "Circumstantial evidence is the proof of certain facts and circumstances from which the fact finder may infer other connected facts which usually and reasonably follow according to the common experience of mankind." *Eskridge v. Farmers New World Life Insurance Co.*, 250 Ill. App. 3d 603, 610 (1993). A fact can be established using circumstantial evidence as long as "the

10

circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn." *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 473 (2010).

¶ 34    The circuit court disregarded Father's testimony and concluded that Father was only able to speculate as to how and where the incident occurred. The circuit court further found that the plaintiff was unable to create a genuine issue of material fact without competent testimony concerning the facts involving the incident.

¶ 35    The plaintiff, however, was able to present more evidence than merely the occurrence of an accident. Although Father did not see the impact of Elmer's vehicle striking B.R., Father had direct, personal knowledge of the circumstances surrounding the occurrence. His testimony was not speculative. Rather, he was a lay witness to the events that transpired. Father provided testimony that from where he was seated, and before he went to his daughter's aid, he was able to see B.R. on the ground. He heard her friend scream out that B.R. had been hit. He saw the location of her bicycle, and the location of Elmer's car, all of which were in his driveway. Father saw that "the car had stopped right there" and was able to testify to the position of Elmer's car with "the front end facing towards the garage at an angle." From this eyewitness testimony, a fact finder could infer that Elmer had driven off the road and struck B.R. in the plaintiff's driveway. Further, a fact finder could infer that Elmer's vehicle should not have been in Father's driveway and that Elmer negligently failed to keep his vehicle in the roadway. The facts could also allow one to infer that B.R. was struck by Elmer's vehicle based upon the location of the bicycle and the car.

¶ 36    In light of Father's eyewitness testimony, the plaintiff presented sufficient circumstantial evidence that could support each element of negligence as alleged in plaintiff's complaint. Therefore, summary judgment for the defendant was improper.

11

¶ 37          III. CONCLUSION

¶ 38 For the foregoing reasons, we reverse the judgment of the circuit court of Coles County and remand the matter for further proceedings.

¶ 39 Reversed and remanded.